UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID L. BYRD,

                    Petitioner,

v.                                    Case No. 3:09-cv-78-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

## ORDER

### I. Status

        Petitioner Byrd initiated this action by filing a pro se
Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28
U.S.C. § 2254 on January 22, 2009, pursuant to the mailbox rule.
Petitioner challenges a 2001 state court (Duval County, Florida)
judgment of conviction for burglary of a dwelling on three grounds.
Respondents have submitted a memorandum in opposition to the
Petition.  See Respondents' Response to Habeas Petition (Response)
(Doc. #18); Exhibits (Resp. Ex.) (Doc. #24).  On February 10, 2009,
the Court entered an Order to Show Cause and Notice to Petitioner
(Doc. #4), admonishing Petitioner regarding his obligations and
giving Petitioner a time frame in which to submit a reply.

Petitioner submitted a brief in reply on December 14, 2009. <u>See</u> Petitioner's Traverse/Reply to Response to Petition for Writ of Habeas Corpus (Reply) (Doc. #19); Exhibits (Pet. Ex.)  This case is ripe for review.

## II. Procedural History

On May 25, 2001, the State of Florida charged David Lance Byrd with burglary of a dwelling, a second degree felony, in violation of Florida Statutes § 810.02(3).  Resp. Ex. B at 10-11, Information.  After jury selection, Byrd proceeded to a jury trial. Resp. Ex. C, Transcript of the Jury Trial Proceedings (Tr.).  At the conclusion of the trial, a jury found Byrd guilty, as charged in the Information, of burglary of a dwelling.  Resp. Ex. B at 58, Verdict; Tr. at 291.  On November 30, 2001, the trial court sentenced Petitioner, as a habitual felony offender, to a term of thirty years imprisonment.  Resp. Ex. C at 113-18, Judgment.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial court erred in failing to grant Byrd a new trial after the State made an allegedly improper closing argument. Resp. Ex. D.  The State filed an Answer Brief, <u>see</u> Resp. Ex. E, and Petitioner filed a Reply Brief, <u>see</u> Resp. Ex. F.  On June 13, 2003, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion.  <u>Byrd v. State</u>, 848 So.2d 308 (Fla. 1st DCA 2003); Resp. Ex. G.  The mandate

issued on July 1, 2003.[1]  Petitioner did not seek review in the
United States Supreme Court.

On May 10, 2004, Petitioner filed a pro se motion for post
conviction relief pursuant to Florida Rule of Criminal Procedure
3.850 (Rule 3.850 motion).  Resp. Ex. H at 1-31.  In his request
for post conviction relief, Petitioner asserted that his counsel
was ineffective because he: failed to object to the prosecutor's
allegedly improper closing argument (ground one); failed to
adequately cross examine his mother, a key defense witness (ground
three); failed to subpoena Darren Harniman, a key defense witness
(ground four); failed to notify the court that a juror was sleeping
and have the juror removed and/or replaced (ground five); waived
Byrd's presence at the deposition of Maureen Romano, a key State
witness (ground six); and failed to object to a jury instruction
which contained an allegedly inaccurate definition of an element of
the offense charged (ground seven).  Additionally, Byrd alleged
that counsel was under the influence of drugs while representing
him (ground eight).  Lastly, Byrd claimed that the thirty-year
habitual felony offender sentence was vindictive (ground two).[2]
After an evidentiary hearing, see id. at 208-390, Transcript of the

---

[1] Online docket, David Byrd v. State of Florida, Case No.
1D02-9, website for the First District Court of Appeal
(http://www.1dca.org).

[2] Bryd withdrew this claim at the evidentiary hearing.  See
Resp. Ex. H at 204, 290.

Evidentiary Hearing (EH Tr.), the circuit court denied Byrd's Rule 3.850 motion on April 9, 2007. <u>Id</u>. at 201-07. The court also denied Byrd's motion for rehearing on April 24, 2007. <u>Id</u> at 395-99.

Byrd appealed the denial and filed a brief. Resp. Ex. I. The State filed an Answer Brief, <u>see</u> Resp. Ex. J, and Byrd filed a Reply Brief, <u>see</u> Resp. Ex. K. On August 29, 2008, the appellate court affirmed the denial per curiam, <u>see</u> <u>Byrd v. State</u>, 992 So.2d 253 (Fla. 1st DCA 2008); Resp. Ex. L, and the mandate issued on November 3, 2008, <u>see</u> Resp. Ex. M.[3]

On February 5, 2008, Petitioner filed a second <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (second Rule 3.850 motion), in which he asserted that, based on newly discovered evidence, counsel failed to communicate the State's plea offer of fifteen years incarceration in return for a plea of guilty as to the charged offense. Resp. Ex. N at 1-13. After an evidentiary hearing, <u>see</u> <u>id</u>. at 28-78, Transcript of the Evidentiary Hearing (2nd EH Tr.), the circuit court denied Byrd's second Rule 3.850 motion on March 14, 2008. <u>Id</u>. at 25-26.

Byrd appealed the denial and filed a brief. Resp. Ex. O. The State filed an Answer Brief, <u>see</u> Resp. Ex. P, and Byrd filed a

---

[3] Online docket, <u>David Lance Byrd v. State of Florida</u>, Case No. 1D07-2787, http://www.1dca.org.

4

Reply Brief, <u>see</u> Resp. Ex. Q.  On January 23, 2009, the appellate court affirmed the denial per curiam, <u>see</u> <u>Byrd v. State</u>, 1 So.3d 176 (Fla. 1st DCA 2009); Resp. Ex. R, and the mandate issued on February 18, 2009, <u>see</u> Resp. Ex. R.[4]

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 3-4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

---

[4] Online docket, <u>David L. Byrd v. State of Florida</u>, Case No. 1D08-2308, http://www.1dca.org.

# V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application'

> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." Williams, 529
> U.S. at 409, 120 S.Ct. at 1521. Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[5]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.

denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770,

785 (2011) (holding that section 2254(d) does not require a state

court to give reasons before its decision can be deemed to have

been adjudicated on the merits); Wright v. Sec'y for the Dep't of

Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.

906 (2003). Thus, to the extent that Petitioner's claims were

adjudicated on the merits in the state courts, they must be

evaluated under § 2254(d).

---

[5] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in
> federal court, a petitioner must exhaust all
> state court remedies that are available for
> challenging his state conviction. <u>See</u> 28
> U.S.C. § 2254(b), (c). To exhaust state
> remedies, the petitioner must "fairly
> present[]" every issue raised in his federal
> petition to the state's highest court, either
> on direct appeal or on collateral review.
> <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109
> S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989)
> (emphasis omitted). Thus, to properly exhaust
> a claim, "state prisoners must give the state
> courts one full opportunity to resolve any
> constitutional issues by invoking one complete
> round of the State's established appellate
> review process." <u>O'Sullivan v. Boerckel</u>, 526
> U.S. 838, 845, 119 S.Ct. 1728, 1732, 144
> L.Ed.2d 1 (1999).

<u>Maples v. Allen</u>, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam),

<u>petition granted in part</u>, 131 S.Ct. 1718 (U.S. Mar. 21, 2011) (No.

09A974, 10-63).

Procedural defaults may be excused under certain

circumstances: "[n]otwithstanding that a claim has been

procedurally defaulted, a federal court may still consider the

claim if a state habeas petitioner can show either (1) cause for

and actual prejudice from the default; or (2) a fundamental

miscarriage of justice." <u>Id</u>. at 890 (citations omitted). In order

for Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own

conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
U.S. at 488, 106 S.Ct. 2639). Under the
prejudice prong, [a petitioner] must show that
"the errors at trial actually and
substantially disadvantaged his defense so
that he was denied fundamental fairness." <u>Id</u>.
at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999), <u>cert</u>. <u>denied</u>,

528 U.S. 934 (1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result. The Eleventh Circuit

has explained:

[I]f a petitioner cannot show cause and
prejudice, there remains yet another avenue
for him to receive consideration on the merits
of his procedurally defaulted claim. "[I]n an
extraordinary case, where a constitutional
violation has probably resulted in the
conviction of one who is actually innocent, a
federal habeas court may grant the writ even
in the absence of a showing of cause for the
procedural default." <u>Carrier</u>, 477 U.S. at
496, 106 S.Ct. at 2649.[6] "This exception is
exceedingly narrow in scope," however, and
requires proof of actual innocence, not just
legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
1156, 1171 (11th Cir. 2001).

<u>Id</u>. "To meet this standard, a petitioner must 'show that it is

more likely than not that no reasonable juror would have convicted

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

9

him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." <u>Id</u>., at
687, 104 S.Ct. 2052.

    With respect to prejudice, a challenger
must demonstrate "a reasonable probability
that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different. A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." <u>Id</u>., at 687, 104
S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment

violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>,

592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s

high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788

(quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is

accorded great deference. "The standards created by <u>Strickland</u> and

§ 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104

S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct.

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,

review is 'doubly' so, <u>Knowles</u>[7], 556 U.S., at ----, 129 S.Ct. at

1420." <u>Harrington</u>, 131 S.Ct. at 788.

---

[7] <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009).

11

The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VIII. Findings of Fact and Conclusions of Law

### A. Background

In an Order denying Byrd's Rule 3.850 motion, the circuit court stated:

> The facts underlying this cause are relatively simple. The Defendant was convicted by jury verdict rendered November 1, 2001, of burglary to a dwelling. On November 30 of that year, then, he was adjudicated guilty of the offense and sentenced to serve a term of thirty (30) years in the Florida State Prison as an habitual felony offender. The judgment and sentence were per curiam affirmed by the First District Court of Appeal.

12

At trial, the State produced evidence that the Defendant had broken into the home of one Roxanne Morgan, and stole money therefrom. The Defendant testified, and actually did not contradict these facts. He asserted, though, that he was highly intoxicated at the time in question; and that he actually thought he was breaking into the home of one of his friends, who lived nearby. The Defendant asserted that he had the right to enter the friend's home.

Another friend of the Defendant testified that she had taken him to the neighborhood where the break-in occurred, and that Defendant had asked her to take him to the home of the friend who lived near the victim. The officer who arrested the Defendant at a convenience store near the burglary site, where the Defendant was casually standing, also testified that the Defendant claimed he had just been in his friend's home. The Defendant's mother, further, testified that the Defendant had called her from the victim's home. The Defense attempted to elicit from her testimony that the Defendant said he was at the friend's home. The mother actually did state that the Defendant had made such a statement, but this portion of her testimony received an objection from the State on the grounds of hearsay, and the objection was upheld by the Court.

Finally, after deliberating for a period of only approximately five minutes, the jury rendered a verdict of guilty.

Resp. Ex. H at 201-02.

## **B. Ground One**

As ground one, Byrd claims:

Petitioner was deprived of his Sixth and Fourteenth Amendment rights to effective assistance of trial and/or appellate counsel, a fair trial, due process and of a judgment of acquittal in violation of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), <u>Evitts v.</u>

<u>Lucey</u>, 469 U.S. 387 (1985) and <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

Petition at 4. Assuming that <u>pro</u> <u>se</u> Petitioner intends to raise the same ineffectiveness of trial counsel claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted.[8] This issue was addressed at the state court evidentiary hearing, and after the evidentiary hearing, the trial court denied the Rule 3.850 motion relating to this issue, stating:

> Next, Defendant claims that his trial counsel was ineffective for failing to object to an allegedly improper jury instruction. The instruction allegedly violated the Supreme Court's dictates issued in <u>Delgado v. State</u>, 776 So.2d 233 (Fla. 2000).
>
> The Florida Supreme Court rendered its opinion in <u>Delgado</u> on August 24, 2000. The date of the offense in the case at bar was May 5, 2001. Florida Statute [§] 810.015, judicially noticed by the Court during the evidentiary hearing, was promulgated with an effective date of May 25, 2001, and by its own terms, it legislatively overruled the holding in <u>Delgado</u> retroactively to February 1, 2000. This Defendant's trial was conducted the week of Halloween, 2001. Therefore, the statutory law in existence on the date of trial had

---

[8] To the extent that Byrd has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred. <u>See</u> Response at 6. Moreover, to the extent that he intends to raise claims relating to the ineffectiveness of appellate counsel and the denial of his right to a fair trial and due process of law, those claims are also procedurally barred. <u>See</u> <u>id</u>. Byrd has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

> overruled the holding in <u>Delgado</u> retroactively.
>
> Unlike the situation in <u>State v. Robinson</u>, 936 So.2d 1198 (Fla. 1st DCA 2006), this Defendant's trial did not occur during the period of time where the holding in <u>Delgado</u> appeared to have any legal effect. It should not be considered ineffective assistance for counsel to have recognized and litigated in conformity with the law in effect on the date of the litigation. <u>See</u>, <u>Hopkins v. State</u>, 743 So.2d 171 (Fla. 5th DCA 1999). It was not until the last day of 2002 that the First District Court of Appeal ruled that Florida Statute [§] 810.015 could operate only prospectively, and not retroactively. <u>See</u>, <u>Mosley v. State</u>, 842 So.2d 855 (Fla. 1st DCA 2002).

Resp. Ex. H at 205-06. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. The record supports the trial court's findings. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

A review of Florida law at the time of Byrd's trial[9] is necessary for determining whether counsel's representation was within the "wide range" of reasonable professional assistance. On August 24, 2000, in a revised opinion on rehearing, the Florida Supreme Court recognized that there are two methods by which

---

[9] Jury selection was on Monday, October 29, 2001, and the trial took place on Thursday, November 1, 2001. See Tr. at 1, 23; Resp. Ex. B at 58, Verdict, dated November 1, 2001.

burglary can be committed, _i.e._, unlawful entry with the intent to commit a crime, or remaining in a structure or conveyance with the intent to commit a crime therein. See <u>Delgado v. State</u>, 776 So.2d 233 (Fla. 2000) (per curiam). The issue before the <u>Delgado</u> court was "whether the phrase 'remaining in' found in Florida's burglary statute[10] should be limited to situations where the suspect enters lawfully and subsequently secretes himself or herself from the host." <u>Id</u>. at 238. After reviewing the evolution of the crime of burglary, the Florida Supreme Court concluded that the "remaining in" burglary theory applied "only in situations where the remaining in was done surreptitiously." <u>Id</u>. at 240. Thus, in order to prove burglary after an initial consensual entry, the evidence must show that the defendant remained in the structure surreptitiously. <u>Id</u>. at 240-41. The court explained:

> In the present case, there exists sufficient evidence in the record that appellant met his burden of establishing consensual entry. We are cognizant that after appellant entered the victims' home, he is accused of committing two heinous murders. Regardless of whether these accusations are true, appellant's actions are not the type of conduct which the crime of burglary was intended to punish. Our decision in no way prevents the State from prosecuting appellant for whatever crimes he may have committed once inside the victims' home. But considering both the record in this case and

---

[10] Florida Statutes § 810.02(1)(1989) stated: "'Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."

> the State's theory of the crime, appellant's
> conduct does not amount to burglary.
>
> . . . .
>
> This is not a case where there was merely
> insufficient evidence to support the burglary
> charge.  The jury in this case was instructed
> that a defendant can be found guilty of
> burglary, even if the initial entry was
> consensual, if the victims later withdrew
> their consent.  This theory of burglary was
> also relied on by the State as the underlying
> felony to support the felony murder charge.
> Pursuant to our analysis in today's opinion,
> such a theory of burglary (and felony murder)
> is legally inadequate.

Id. at 240-41, 242 (footnote omitted).  Notably, the court pointed

out that, in addition to the testimony from the police that there

were no signs of a forced entry into the victims' home, the State

made remarks during the trial indicating that "its theory was

withdrawn consent after entry."  Id. at 240 n.6.  The court

concluded: "This opinion will not, however, apply retroactively to

convictions that have become final."  Id. at 241 (citation and

footnote omitted).

In 2001, the Florida Legislature statutorily abrogated the

Delgado decision, as applied to burglary offenses committed after

February 1, 2000, and clarified that "for a burglary to occur, it

is not necessary for the licensed or invited person to remain in

the dwelling, structure or conveyance surreptitiously." Fla. Stat.

§ 810.015(1), (2); Ch. 2001-58, § 1, Laws of Fla., effective May

25, 2001; see Lynch v. State, 2 So.3d 47, 61 n.8 (Fla. 2008); State

18

v. Ruiz, 863 So.2d 1205, 1209-12 (Fla. 2003) (holding that "section 1 of chapter 2001-58, which is codified at section 810.015, Florida Statutes (2002), is not applicable to conduct that occurred prior to February 1, 2000"). Byrd's trial was November 1, 2001. Well after Byrd's trial, in defining the window for those individuals affected by the Delgado decision, the Florida Supreme Court stated: "Delgado applies to burglaries committed before February 1, 2000, which had not been finally adjudicated at the time [the Florida Supreme Court] issued its opinion" in Delgado on August 24, 2000. Lynch, 2 So.3d at 61.

First, Byrd is improperly attempting to analogize his case to the Delgado case. Delgado is a case of limited application in that the Florida Supreme Court had held that consent to enter was a complete defense to a burglary charge unless the "remaining in" the premises with unlawful intent was done "surreptitiously." Delgado, 776 So.2d at 237-41. Thus, since Delgado concerns only the situation where the defendant enters the premises with the occupant's consent, there was no basis upon which counsel should have raised the issue since Delgado did not apply. See Johnson v. Fla. Dep't of Corr., 513 F.3d 1328, 1335-36 (11th Cir. 2008) (finding that a petitioner could not demonstrate a due process violation from the failure to retroactively apply the now-abrogated Delgado interpretation of the Florida burglary statute; noting that after Delgado was decided, the Florida Legislature amended §

810.02, the burglary statute, thereby abrogating <u>Delgado</u>).  At Byrd's November 1, 2001 trial, there was an ample basis for a reasonable juror to conclude that Byrd did not enter the victim's house with her consent.

Moreover, as the 3.850 court concluded in denying the Rule 3.850 motion, at the time of Byrd's November 1st trial, the holding in <u>Delgado</u> did not appear to have any legal effect as to Byrd's case.  Thus, based on the record, counsel's performance was within the wide range of professionally competent assistance in that he litigated Byrd's case in conformity with the law in effect on the date of Byrd's trial.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the jury instruction on burglary as a violation of the dictates in <u>Delgado</u>.  Since the jury had no evidence before it suggesting the applicability of the "remaining in" portion of the burglary instruction[11] to the facts of Byrd's case, there is no reasonable likelihood that the jury verdict would have been any different if the jury been instructed that any "remaining in" the dwelling must have been surreptitious.[12]  Therefore, Petitioner's ineffectiveness

---

[11] <u>See</u> Tr. at 269; Resp. Ex. B at 37.

[12] <u>See</u> <u>Ortiz v. Sec'y, DOC</u>, Case No. 2:08-cv-208-FtM-29DNF, 2011 WL 839363, at *12-13, (M.D. Fla. Mar. 7, 2011) (denying relief on petitioner's ineffectiveness claim and stating that, "regardless

claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## C. Ground Two

As ground two, Petitioner claims that counsel was ineffective because he failed to object to the prosecutor's allegedly improper closing argument.  The challenged closing argument is as follows:

> Even per his own statements, ladies and gentlemen, he committed a burglary to his friend's home.
>
> For a moment let's look, let's examine the elements of the crime and for a moment eliminate the name Roxanne Morgan and substitute Darren, the occupant of 99 Saratoga Circle.  He entered or remained in the structure owned or in the possession of Darren.  He admitted that.  He did not have the permission or consent of Darren or anyone authorized to go into Darren's house.  And, again, you go as to intent by his actions within the home, but he himself told you that he didn't talk to Darren on May 5th.  He just went over to his house, had not talked to him, did not get permission to go in his house and did not get permission to take anything from his house.
>
> Ladies and gentlemen, that's theft.  If you walk into a friend's house and take their VCR or take their coins or take their radio or take anything of theirs, despite the fact you're friends, despite the fact you could have had dinner there 80 times in the last year, if you walk into your best friend's house without their permission and take their property without their consent and use it for

_____

of the applicability of <u>Delgado</u>, the record and facts of this case conclusively demonstrate that there is no reasonable likelihood that Defendant could have been prejudiced within the meaning of <u>Strickland</u>").

> your own use, to go buy cigarettes and beer,
> you have committed a burglary. No ifs, ands
> or buts about it. And that's exactly what
> this defendant said on the witness stand
> today. He told you he committed a burglary.
> "I didn't commit a burglary to Roxanne
> Morgan's house because I didn't know it was
> Roxanne Morgan's house," but he admitted to
> the elements of the crime of burglary, even if
> it was true that he entered Darren's house.
> He's guilty of burglary whether his thought
> process was accurate or not.

Tr. at 238-40.

Assuming that Byrd intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, his claim is sufficiently exhausted. This issue was addressed at the state court evidentiary hearing, and ultimately, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> First, Defendant asserts that he received
> ineffective assistance of counsel at trial
> when his lawyer failed to object to allegedly
> improper closing argument made by the State.
> The Defendant's lawyer did, though, move for a
> new trial after the conviction, raising the
> issue of the allegedly improper remarks.[13]
> Thereafter, the issue was vigorously litigated
> before the trial court.[14] It was also the
> only issue raised by the Defendant on
> appeal.[15] The fact that the District Court
> affirmed Defendant's conviction is proof that
> the argument the prosecutor made did not

---

[13] Resp. Ex. B at 59-60 (Motion for New Trial), 61 (Order), 62-66 (Memorandum in Support of Defendant's Motion for New Trial).

[14] Resp. Ex. B at 133-36, 181-94, 195-204.

[15] Resp. Ex. D, Initial Brief of Appellant.

constitute fundamental error, contrary to what Defendant now asserts.[16]

Defendant has failed to demonstrate how the outcome of the trial would have been different had his trial counsel objected to the State's closing argument at the time it was made, rather than post trial. <u>See</u>, <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984).

Indeed, the State's closing comments in question may not have been objectionable at all. The essence thereof was that, if the charging Information had named the Defendant's friend as the victim (rather than the actual victim) Defendant would have been guilty if he had been in the house he said he thought he was in. This would appear to be fair comment on the credibility of the Defendant's own testimony that he had the right to break into the friend's house. It does not suggest that the prosecution was seeking a guilty verdict upon an alternate theory, as Defendant insists. Nor was it an attempt to have the jury "... transfer the intent from a non-victim to a victim." [Defendant's Legal Brief, March 28, 2007, p.2]

Resp. Ex. H at 203. The appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of Byrd's post conviction motion as to this claim on the merits, there are qualifying state court decisions. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Following a review of the record and the applicable law, the Court concludes that the state

---

[16] Resp. Ex. G.

23

courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 26, 230, 249; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions"), cert. denied, 534 U.S. 1085 (2002). Moreover, the trial judge properly instructed the jury that the State must prove three elements beyond a reasonable doubt to find Byrd guilty of burglary of a dwelling, including, as the third element, that: "at the time of the entering or remaining in the structure, David Lance Byrd had a fully-formed conscious intent to commit the offense of theft in that structure." Tr. at 269.

This Court has thoroughly reviewed the record and is convinced that the above-cited comments did not result in a due process violation.[17] Moreover, Petitioner has failed to establish that counsel's performance was deficient for failing to object to the prosecutor's closing argument.[18] Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## D. Ground Three

Byrd claims:

> Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel in violation of Strickland v. Washington, 466 U.S. 668 (1984) and a presumption of judicial

---

[17] The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001), cert. denied, 534 U.S. 1046 (2001).

[18] Notably, at the evidentiary hearing, counsel testified: "I do feel I made a mistake with regard to not objecting to the State's closing argument." EH Tr. at 347. Regardless, such an admission is of little consequence since the reasonableness of counsel's performance is an objective inquiry. See Chandler v. United States, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000) ("Because the standard is an objective one, that trial counsel (at a post-conviction evidentiary hearing) admits that his performance was deficient matters little.") (citation omitted), cert. denied, 531 U.S. 1204 (2001). Moreover, Byrd affirmed that he was satisfied with counsel's representation. Tr. at 216-18.

> vindictiveness in violation of Rule
> 11(c)(1)[19]; <u>United States v. Kraus</u>, 137 F.3d
> 447 (1998).

Petition at 12. He asserts that counsel failed to communicate the

State's plea offer of fifteen years incarceration in return for a

plea of guilty to burglary, the charged offense, and that the trial

judge's imposition of the thirty-year sentence was vindictive.

Assuming that he intends to raise the same ineffectiveness claim

here that he raised in his second Rule 3.850 motion in state court,

his ineffectiveness claim is sufficiently exhausted.[20]  <u>See</u> Resp.

Ex. N at 6-7A.  After addressing the issue at the state court

evidentiary hearing, the trial court denied the Rule 3.850 motion

relating to this issue, stating:

> Defendant alleges newly discovered evidence
> that his trial counsel received a plea bargain
> offer from the State whereby he could be
> sentenced to fifteen years in prison in return
> for a plea of guilty as to the charge for
> which he stands convicted.  Defendant further
> asserts that such [a] plea offer was never
> communicated to him, but that if it had been,

---

[19] <u>See</u> Fed. Rules Cr. Proc. 11(c), entitled "Plea Agreement
Procedure."

[20] To the extent that Byrd intends to raise claims relating to
a vindictive sentence, those claims are procedurally barred.  <u>See</u>
Response at 6.  Byrd has not shown both cause excusing the default
and actual prejudice resulting from the bar.  Moreover, he has not
shown that he is entitled to the fundamental miscarriage of justice
exception.  Even assuming those claims are not procedurally barred,
they are without merit.  The record fully supports the lawfulness
of the thirty-year habitual felony offender sentence.  <u>See</u> Resp.
Ex. B at 18, 204-240.  Before imposition of the sentence, the trial
judge explained his reasoning for the thirty-year sentence.  <u>Id</u>. at
235-37.

> he would have accepted the offer.  Instead, he
> proceeded to trial and received a sentence of
> thirty years in prison.
>
> An evidentiary hearing on the matter was
> held on March 12 and 13, 2008.  The Court
> finds that, in fact, the State never made any
> plea bargain offer in this case.  The only
> discussions concerning a possible plea were
> between Defendant's counsel and the Court.
> However, the Court also never made a firm plea
> offer.

Resp. Ex. N at 25-26.  Following an appeal by Byrd, the appellate

court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule

3.850 motion on the merits, there are qualifying state court

decisions.  Thus, the Court considers this claim in accordance with

the deferential standard for federal court review of state court

adjudications.  After a review of the record and the applicable

law, the Court concludes that the state courts' adjudications of

this claim were not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established

federal law, and were not based on an unreasonable determination of

the facts in light of the evidence presented in the state court

proceedings.  Thus, Petitioner is not entitled to relief on the

basis of this claim.

Moreover, even assuming the state courts' adjudications of

this claim are not entitled to deference, Petitioner's

ineffectiveness claim is without merit.  After the evidentiary

hearing, the state court resolved the credibility issue in favor of

believing the prosecutor's and defense counsel's testimony over that of Byrd. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Byrd has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Petitioner's claim is wholly unsupported, and therefore must fail.

According to Byrd's attorney and the prosecutor, the State never made any plea offer to Bryd. See 2nd EH Tr. at 37-40, 60, 63-64, 66-67. The only discussions concerning a possible plea were between Byrd's counsel[21] and the court. Id. at 37-38. However, the Court never made a firm plea offer to Byrd. Id. at 65-69. Petitioner has shown neither deficient performance nor resulting prejudice. See Response at 21-22.

## IX. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard,

---

[21] Gregory Messore, an Assistant Public Defender, represented Byrd during the initial proceedings, and then, just before the trial, Byrd's mother retained Craig Martin to represent Byrd. See 2nd EH Tr. at 35-36.

see <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009). The remainder of Petitioner's claims are either procedurally barred or without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## X. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of
October, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 10/11
c:
David L. Byrd
Ass't Attorney General (Hill)